U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 DEC 19 PM 2: 07

CLERK
BY: _____ Law
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

ARA LEFRANCOIS, )
)
Plaintiff, )
)
v. ) Case No. 2:19-cv-00072
)
KILLINGTON/PICO SKI RESORT )
PARTNERS, LLC, )
)
Defendant. )

**OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION TO DISMISS**
(Doc. 5)

Plaintiff Ara Lefrancois ("Plaintiff") brings this action against Defendant Killington/Pico Ski Resort Partners, LLC ("Defendant") alleging three claims arising out of a pending state court lawsuit related to injuries she sustained in a skiing accident at Defendant's resort: (1) abuse of process; (2) breach of the implied covenant of good faith and fair dealing; and (3) tortious infliction of emotional distress. Plaintiff seeks compensatory and punitive damages in unspecified amounts.

Pending before the court is Defendant's motion to dismiss, asserting that the court should abstain from hearing this case on the basis that there are ongoing parallel state court proceedings. (Doc. 5.) Plaintiff opposes dismissal.

Plaintiff is represented by John Paul Faignant, Esq. Defendant is represented by Andrew H. Maass, Esq.

**I.    Factual and Procedural Background.**

**A.    The Complaint's Allegations.**

On June 9, 2014, Plaintiff, a Vermont resident, purchased an adult season pass to Pico Mountain, which entitled her to the full use and enjoyment of the ski lifts and tramways operated by Defendant to access its ski resorts in Vermont. She alleges that

Defendant is a "foreign corporation authorized to do business in the State of Vermont," (Doc. 1 at 1, ¶ 3), and that the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

On February 8, 2015, Plaintiff was skiing at Defendant's resort and boarded the "Knomes Knoll Triple" chair lift. *Id.* at 2, ¶ 9. As Plaintiff boarded the chair lift, Defendant's employee, Luicio Ianieri, was allegedly engaged in "horse playing within the tramway chairlift boarding area." *Id.* at 3, ¶ 11. Mr. Ianieri lost control of his snowboard and "crashed into Plaintiff, ripping her from the chair like a wishbone and sl[a]mming her face first into the ground 8 feet below." *Id.* at 3, ¶ 12. As a result of the injuries she sustained in this incident, Plaintiff alleges she "is now imprisoned in a life filled with physical and mental pain. She will never ski again." *Id.* at 3, ¶ 14.

Approximately two weeks later, Defendant completed its investigation and allegedly "confirmed [Plaintiff's] account [of the incident] in an email chain involving the risk manager, and the top management officials of [Defendant]." *Id.* at 3, ¶ 15. When the parties could not agree regarding a resolution, she filed suit in Vermont Superior Court against Defendant and Mr. Ianieri on February 5, 2016, alleging claims of negligence, negligence related to Defendant's status as a common carrier, breach of its statutory duty to operate its ski lift in a safe manner pursuant to 21 V.S.A. §§ 701 and 704, and vicarious liability for the actions of Mr. Ianieri (the "Vermont Civil Suit").

In the course of the Vermont Civil Suit, Defendant's counsel allegedly represented Mr. Ianieri as one of Defendant's employees but declined to accept service on his behalf. Because Mr. Ianieri is a citizen and resident of Argentina, Plaintiff was required to effect service under the provisions of the Hague Convention. Plaintiff incurred costs in her efforts to serve Mr. Ianieri, including the cost of translating the pleadings into Spanish and placing telephone calls to a "freight delivery business in Argentina believed to have been Mr. Ianieri's then-employer[.]" (Doc. 1 at 4, ¶ 19.) To date, Mr. Ianieri has not been served.

Prior to her filing of the Vermont Civil Suit, Defendant allegedly represented to Plaintiff through email that Mr. Ianieri was working in the course and scope of his

2

employment at the time of the incident. Plaintiff characterizes this pre-suit communication as a contract and asserts that she relied on this representation in ceasing "all efforts to serve Mr. Ianieri[.]" *Id.* at 5, ¶ 22. When Defendant filed its Answer in the Vermont Civil Suit, it "denied its attendant [Mr. Ianieri] was in the course and scope of his employment 'at the time of the injury[,]' for the ulterior motive and purpose of breaching its contract with Plaintiff." *Id.* at 5, ¶ 23. "Due to [Defendant's] breach of its contract with Plaintiff, Plaintiff was forced to renew her efforts to serve Mr. Ianieri in Argentina, at additional expense." *Id.* at 5, ¶ 24.

"In refusing to accept service, [Defendant] was ensuring Plaintiff (who spent $1,000 dollars in unnecessary attempts to serve in Argentina) would be unable to depose the attendant [Mr. Ianieri] to confirm [his] course and scope of employment at the time of injury." *Id.* at 5, ¶ 25. Plaintiff further alleges that when she requested emails concerning the event, Defendant denied under oath the existence of an email chain that confirmed her version of the accident. Plaintiff asserts Defendant's contention that she was at fault for her injuries is "without any basis in fact." *Id.* at 6, ¶ 29.

Plaintiff alleges that Defendant's risk manager lost his internal file which reflected Defendant's investigation of Plaintiff's injuries three days prior to his deposition and thereafter denied under oath that the investigation "confirm[ed] the attendant [Mr. Ianieri] had been horsing around when Plaintiff was injured" despite the risk manager's participation in the email chain confirming those findings. (Doc. 1 at 6, ¶ 33.) He further "admitted under oath that [Defendant] had filed false and misleading pleadings" in the Vermont Civil Suit. *Id.* at 6, ¶ 34. According to Plaintiff, Defendant has since "admitted what it had been lying about all along" and has conceded liability. *Id.* at 7, ¶ 36.

With respect to her medical care, Plaintiff alleges that Defendant "enjoyed a special relationship with many of the local medical service providers, and in particular, [P]laintiff's primary care provider, hospital, [and] orthop[]edic and mental health services Plaintiff required as a result of her injuries." *Id.* at 7, ¶ 37. "In addition to [Defendant's] special relationship, it was aware that its chosen attorney also represented those providers who treated [P]laintiff for injuries caused by [Defendant]." *Id.* at 7, ¶ 38. Plaintiff asserts

3

that Defendant's counsel requested to depose some of those providers and then allegedly "used these special relationships to prohibit Plaintiff from meeting with her own doctors prior to their being deposed." *Id.* at 7, ¶¶ 39-40. Plaintiff alleges that Defendant:

> was aware that its attorney had an actual conflict of interest in that its attorney's medical center client was/is adverse to [Defendant], in that the medical center client physicians have rendered reports and testimony contradicting [Defendant's] denial of causation of Plaintiff's injuries, and have opined that Plaintiff's physical and mental health injuries were all directly and proximately caused by the action of [Defendant].

(Doc. 1 at 7, ¶ 42.) Plaintiff further contends that Defendant "used its attorney's dual representation of both Plaintiff's medical center physicians and [Defendant] on material issues, which resulted in its attorney cross-examining or criticizing his own medical center client's standards and qualifications in an attempt to diminish the effect of their testimony against [Defendant]." *Id.* at 8, ¶ 43. In response to Plaintiff's "claim of interference with her treating physicians," Defendant also allegedly "made a false denial on a material issue" by speaking on those providers' behalf, without their knowledge, "about their unwillingness to speak with Plaintiff and her counsel[.]" *Id.* at 8, ¶ 44.

Plaintiff asserts that Defendant filed a series of false pleadings in the Vermont Civil Suit and "wasted court time and resources on a material issue, without any basis in fact, forcing Plaintiff to file multiple unnecessary motions to address the course and scope [of the] issue." *Id.* at 8, ¶ 48. She further alleges that Defendant "willfully and falsely denied the existence of material documents in discovery and intentionally withheld their production[,]" *id.* at 8, ¶ 49, and that it "knowingly served false responses to discovery on material issues." *Id.* at 9, ¶ 50.

Plaintiff further alleges that Defendant "[gave] false testimony under oath, and issu[ed] an improper subpoena[,]" which she asserts "constitutes an improper and unauthorized use of the court process." (Doc. 1 at 9, ¶ 53.) As a result, she "suffered . . . unnecessary expenses and attorney's fees." *Id.* at 11, ¶ 64.

Plaintiff asserts that Defendant's conduct "as set out in the Complaint" breached the covenant of good faith and fair dealing implied in her season pass contract and the

4

"pre-suit contract" created by Defendant's email regarding the incident. *Id.* at 11, ¶¶ 71-72. She alleges that Defendant engaged in "outrageous conduct which was done intentionally and/or with reckless disregard of the probability of causing emotional distress to Plaintiff, and which in fact did result in the suffering of extreme emotional distress[.]" *Id.* at 12, ¶ 74.

Plaintiff seeks emotional distress damages, as well as punitive damages, based on Defendant's "willful and intentional breach of its obligation of good faith and fair dealing in willful and wanton disregard of the Plaintiff's rights[,]" its "willful and intentional breach of its obligations as a litigant[,]" and its "wrongful conduct toward the Plaintiff[.]" (Doc. 1 at 12-13, ¶¶ 77-79.)

### B. The Vermont Civil Suit.

On January 11, 2018, Plaintiff amended her Complaint in the Vermont Civil Suit to include a fifth count ("Count V") for Defendant's "reckless disregard of [the] duty of safety" owed to Plaintiff. (Doc. 5-8 at 16.) In her amended Vermont Civil Suit Complaint, Plaintiff adds allegations regarding Defendant's "willful, wanton, and reckless conduct" which she contends included "obtaining false statements of the event injuring Plaintiff[,]" "filing false reports with the State of Vermont concerning the event which injured Plaintiff[,]" and "filing false pleadings in court." *Id.* at 16-18, ¶¶ 58(h),(i),(r). She seeks an award of compensatory damages, attorney's fees, and punitive damages from Defendant.

In the Vermont Civil Suit, Defendant moved for partial summary judgment on the issue of whether Plaintiff was entitled to recover punitive damages and attorney's fees. In her February 5, 2018 opposition, Plaintiff argued that she could recover attorney's fees because Defendant acted in "bad faith[,]" as evidenced by its "breaching its agreement" with her, its "filing false pleadings," its "fail[ure] to properly document" and "investigate" the event, its "claim[] it lost its file on this claim," its "misrepresenting what [the] file contained," its "misrepresenting the knowledge of the head of Pico," its "intentional[] fail[ure] to produce documents requested in discovery[,]" and "its lying during deposition testimony[.]" (Doc. 5-9 at 26-27.)

On May 14, 2018, the Vermont Superior Court granted Defendant's motion for partial summary judgment and dismissed Plaintiff's request for punitive damages and attorney's fees. (Doc. 5-4 at 2.) In so ruling, the Vermont Superior Court "note[d] a wide divergence between that claim as pleaded and as argued in response to the motion for partial summary judgment[,]" the latter of which more closely resembled "a sanction for Defendant's post-accident conduct—principally in defense of this case." *Id.* at 7. The court held that "none of these allegations—individually or in the aggregate—has anything to do with the merits of this case[,]" and although "they might support an award of sanctions . . . [n]o such motion [is] properly before the court[.]" *Id.* at 7-8. "[I]n hopes of forestalling further unnecessary motion practice," the court further "studiously analyzed the evidence Plaintiff cite[d] in her arguments in favor of attorney's fees[,]" which "suggest[ed] that even if Plaintiff had complied with the [motion] rule, a subsequent motion for Rule 11 sanctions would fail." *Id.* at 8 n.3.

On March 19, 2018, Plaintiff filed a motion in the Vermont Civil Suit to preclude defense counsel from "continued interference" with Plaintiff's experts and treating physicians. (Doc. 5-10 at 2.) In her motion, Plaintiff argued that defense counsel's firm represented the primary care physician, mental health counselor, and orthopedic physician from whom she sought treatment in connection with the injuries she sustained in the incident. She asserted that defense counsel's relationship with her treating physicians posed a conflict of interest, especially because she was required to seek permission from defense counsel's law firm in order to speak with her own treating physicians, some of whom were Plaintiff's experts, prior to their depositions.[1] She further requested that the Vermont Superior Court ask Defendant's counsel to recuse himself. The Vermont Superior Court denied her motion on April 9, 2018.

---

[1] According to the motion, Defendant's counsel agreed to "send a generic letter to [the physicians' group] advising of the inapplicability of their no-contact rule in this instance." (Doc. 5-10 at 5.) Defendant's counsel also recused himself prior to the deposition of one of Plaintiff's treating physicians so that Plaintiff could speak with that individual.

6

Thereafter, Plaintiff asked the presiding judge of the Vermont Superior Court to recuse himself on the grounds that his "failing to address Plaintiff's information under the applicable Rules and denying Plaintiff her right to be heard prior to ruling on motions . . . created the appearance of favoritism to the Defendant and Defendant's counsel." (Doc. 5-13 at 2.) She argued that the presiding judge did not "follow the rules intended to protect the truth" in the face of "uncontroverted evidence of interference with witnesses, concealment of evidence, false pleadings, and lying under oath[.]" *Id.* at 5. When the presiding judge denied her motion, she renewed her motion to recuse him, arguing he had failed to refer her prior motion to another Vermont Superior Court judge for adjudication. Upon referral, the second judge also denied her motions for recusal because "[w]hile Ms. Lefrancois may disagree with Judge Hoar's rulings[,]" the court found "no indication that the decisions were based on personal feelings or that he harbored any bias against the plaintiff." (Doc. 5-5 at 4.)

On April 4, 2019, Plaintiff filed a motion for extraordinary relief from the Vermont Supreme Court requesting that it compel Vermont Bar Counsel for the Vermont Office of Professional Responsibility to investigate defense counsel's alleged conflicts of interest with respect to her treating physicians. The Vermont Supreme Court denied Plaintiff's motion on May 8, 2019, *In re Faignant*, 2019 VT 29, 212 A.3d 623, concluding that Plaintiff lacked standing to challenge the disciplinary process because only the subject attorney suffers injury as a result of the disposition. *Id.*, 2019 VT 29, at ¶ 12, 212 A.3d at 626.

The Vermont Civil Suit is scheduled for a jury draw on February 20, 2020.

## II. Legal Analysis and Conclusions.

Defendant moves to dismiss under Fed. R. Civ. P. 12(b)(1), asking the court to abstain from exercising jurisdiction under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) because the Vermont Civil Suit is a "substantially identical" parallel proceeding, and because "wise judicial administration" and the *Colorado River* factors counsel against the court's exercise of jurisdiction. (Doc. 5 at 9,

10.) In her opposition, Plaintiff contends that the Vermont Civil Suit does not constitute a parallel court proceeding and that the *Colorado River* factors weigh against abstention.

## A. Standard of Review.

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). In the context of a motion seeking *Colorado River* abstention, the court may consider evidence outside the pleadings. *See Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017) (noting that "a court may refer to 'evidence outside of the pleadings, such as affidavits' to resolve 'disputed jurisdictional fact issues'" in considering whether to abstain under *Colorado River*) (quoting *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016)).

Although a federal district court has discretion to abstain from exercising its federal jurisdiction, *see Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 99 (2d Cir. 2012), because abstention represents an "exception to a court's normal duty to adjudicate a controversy properly before it, the district court's discretion must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Dittmer v. Cty. of Suffolk*, 146 F.3d 113, 116 (2d Cir. 1998) (citation and internal quotation marks omitted). If the facts of the case do not meet "traditional" abstention requirements, "there is little or no discretion to abstain[.]" *Id.*

## B. Whether the Court Should Abstain from Exercising Its Jurisdiction under the *Colorado River* Doctrine.

"The rule is well recognized that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[.]" *McClellan v. Carland*, 217 U.S. 268, 282 (1910). Thus, "abstention is generally disfavored, and federal courts have a 'virtually unflagging obligation' to exercise their jurisdiction." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (citation omitted); *see also*

*Colo. River*, 424 U.S. at 813 ("Abstention from the exercise of federal jurisdiction is the exception, not the rule.").

Under the *Colorado River* abstention doctrine, in "'exceptional circumstances,' a federal court [nonetheless] may abstain from exercising jurisdiction when parallel state-court litigation could result in 'comprehensive disposition of litigation' and abstention would conserve judicial resources[.]" *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (quoting *Colo. River*, 424 U.S. at 813, 817-18); *cf. Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959) (holding abstention may be granted where "the order to the parties to repair to the state court would clearly serve an important countervailing interest"). This ground for abstention is "unrelated to considerations of proper constitutional adjudication" and rests on "considerations of wise judicial administration[.]" *Colo. River*, 424 U.S. at 817 (citation, alteration, and internal quotation marks omitted). Although "the circumstances permitting the dismissal of a federal suit due to the presence of a concurrent state proceeding for reasons of wise judicial administration are considerably more limited than the circumstances appropriate for abstention[,]" those circumstances, "though exceptional, do nevertheless exist." *Id.* at 818.

To determine whether to abstain from exercising jurisdiction under *Colorado River*, the Second Circuit follows a two-prong approach. "[A] finding that the concurrent proceedings are 'parallel' is a necessary prerequisite to abstention under *Colorado River*." *Dittmer*, 146 F.3d at 118. "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (citation omitted). "[A]bsolute congruency is not necessary to support a finding of *Colorado River* parallelism," *Pabco Constr. Corp. v. Allegheny Millwork PBT*, 2013 WL 1499402, at *2 (S.D.N.Y. Apr. 10, 2013), and "[p]erfect symmetry of parties and issues is not required." *United States v. Blake*, 942 F. Supp. 2d 285, 297 (E.D.N.Y. 2013) (citation omitted) (alterations in original). Instead, courts focus on the "substantial likelihood that the state litigation will dispose of all

9

claims presented in the federal case." *Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th Cir. 1988) (citation omitted).

Here, the suits are parallel because Plaintiff's federal action "concerns the same events and seeks the same relief requested in the original state court action, and there is no reason to believe [Plaintiff] cannot raise [her] theor[ies] in the pending original action." *Telesco v. Telesco Fuel & Masons' Materials, Inc.*, 765 F.2d 356, 362 (2d Cir. 1985) (footnote omitted); *see also First Keystone Consultants, Inc. v. Schlesinger Elec. Contractors, Inc.*, 862 F. Supp. 2d 170, 184 (E.D.N.Y. 2012) (holding proceedings were parallel where "the relief sought . . . in the Federal Action" was "ultimately also sought in the [state] [a]ction"). Indeed, Plaintiff's claims pending before this court are almost entirely based on acts and omissions that took place in the Vermont Civil Suit. Plaintiff's claims therefore "could properly be raised in the state court under the pleadings of the original action," *Telesco*, 765 F.2d at 363, and in fact many of those claims have been.

Although Plaintiff alleges different causes of action in the Complaint before this court, "[m]erely raising an alternative theory of recovery, which may still be raised in state court, is not enough to differentiate the federal suit from the state suit." *Id.* at 362; *see also Iacovacci v. Monticciolo*, 2019 WL 2074584, at *5 (S.D.N.Y. May 9, 2019) (holding that four new state law causes of action asserted in federal court were "a mere attempt to cast the same grievances in the form of new legal theories" and did not defeat parallelism where the facts underlying one of the new claims "consists of the same factual allegations as [plaintiff's] claims . . . in state court") (citation, alterations, and internal quotation marks omitted); *Dunne v. Doyle*, 2014 WL 3735287, at *8 (D. Conn. July 28, 2014) ("[I]t cannot be the case that merely adding a state law cause of action seeking monetary damages would be sufficient to destroy the parallel nature of the proceedings when several of the other causes of action in both proceedings seek the same relief, i.e., monetary damages, and the actions are based on an identical factual predicate."). The Vermont Civil Suit and this action involve the same parties, several of the same claims, and the same subject matter. Plaintiff essentially seeks to relitigate the Vermont Superior Court's procedural and substantive decisions rather than pursue them

10

on appeal. Her federal claims will therefore "almost inevitably be resolved" in the Vermont Civil Suit. *See Day*, 862 F.2d at 656.

Because the proceedings are parallel, the second prong of the Second Circuit's analysis requires consideration of the *Colorado River* factors:

> (1) [W]hether the controversy involves a res over which one of the courts has assumed jurisdiction []; (2) whether the federal forum is less inconvenient than the other for the parties []; (3) whether staying or dismissing the federal action will avoid piecemeal litigation []; (4) the order in which the actions were filed, [] and whether proceedings have advanced more in one forum than in the other []; (5) whether federal law provides the rule of decision []; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights[.]

*Woodford v. Cmty. Action Agency of Greene Cty., Inc.*, 239 F.3d 517, 522 (2d Cir. 2001) (alterations and internal quotation marks omitted) (citing *Colo. River*, 424 U.S. at 813, 817, 818; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22, 23, 25-27 (1983)). "'[T]he vexatious or reactive nature of either the federal or the state litigation may [also] influence the decision whether to defer to a parallel state litigation under *Colorado River*.'" *Telesco*, 765 F.2d at 363 (quoting *Moses H. Cone*, 460 U.S. at 17 n.20).

In evaluating the *Colorado River* factors, the court's task is "not to find some substantial reason for the *exercise* of federal jurisdiction . . .; rather, the task is to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *Moses H. Cone*, 460 U.S. at 25-26 (emphasis in original). "[N]one of these factors alone is necessarily determinative, but, instead, a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (citation omitted). The court's analysis must not "rest on a mechanical checklist," but reflect a "careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Moses H. Cone*, 460 U.S. at 16; *see also Telesco*, 765 F.2d at 362 (noting the "exceptional

circumstances test" should "be applied in a pragmatic, flexible manner with a view to the realities of the case at hand") (citation omitted). "The weight to be given to any one factor may vary greatly from case to case, depending on the particular setting of the case." *Moses H. Cone*, 460 U.S. at 16. "Where a *Colorado River* factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it." *Niagara Mohawk Power Corp.*, 673 F.3d at 101 (citation and internal quotation marks omitted).

### 1. The Res and Convenience of the Parties.

Defendant concedes that there is no res in this matter and argues unpersuasively that it would be inconvenient for the parties to travel between Burlington, Vermont and Rutland, Vermont. "[T]he absence of a res points toward exercise of federal jurisdiction." *Woodford*, 239 F.3d at 522 (alteration and citation omitted). With respect to the second factor, "where the federal court is 'just as convenient' as the state court, that factor favors retention of the case in federal court." *Vill. of Westfield v. Welch's*, 170 F.3d 116, 122 (2d Cir. 1999) (citing *Youell v. Exxon Corp.*, 48 F.3d 105, 113 (2d Cir. 1995), *vacated on other grounds*, 516 U.S. 801 (1995)).

### 2. Concerns of Piecemeal Litigation.

"By far the most important factor" in determining whether dismissal was appropriate in *Colorado River* was the existence of a "clear federal policy of avoidance of piecemeal adjudication[.]" *Moses H. Cone*, 460 U.S. at 16 (alterations and citation omitted). "Piecemeal litigation occurs when different tribunals consider the same issue, thereby duplicating efforts and possibly reaching different results." *Day*, 862 F.2d at 659 (alteration and citation omitted).

The vast majority of Plaintiff's claims in this lawsuit ask the court to second-guess how the Vermont Superior Court has handled the Vermont Civil Suit. This type of claim is "peculiarly appropriate for comprehensive treatment in the [state] forums having the greatest experience and expertise, assisted by state administrative officers acting under the state courts." *Moses H. Cone*, 460 U.S. at 16 (citing *Colo. River*, 424 U.S. at 819-20). As the Supreme Court has explained:

[S]ince a judgment by either court would ordinarily be res judicata in the

12

other, the existence of such concurrent proceedings creates the serious potential for spawning an unseemly and destructive race to see which forum can resolve the same issue first[, which would be] prejudicial, to say the least, to the possibility of reasoned decisionmaking by either forum.

*Ariz. v. San Carlos Apache Tribe of Ariz.*, 463 U.S. 545, 567-68 (1983). In such circumstances, the court's "refus[al] to abstain . . . will force [D]efendant[] to defend this complex litigation on two fronts[,]" and "inconsistent disposition of these claims between two concurrent forums would breed additional litigation on assertions of claim and issue preclusion." *Arkwright-Boston Mfrs. Mut. Ins. Co. v. City of N.Y.*, 762 F.2d 205, 211 (2d Cir. 1985) (affirming the district court's abstention under *Colorado River*).

Even if the doctrine of collateral estoppel or res judicata reduced the likelihood of inconsistent outcomes, abstention is warranted to prevent an "unseemly and destructive race" and the waste of judicial resources. *Ariz.*, 463 U.S. at 567; *see also Bertrand v. Demmon*, 2017 WL 2303994, at *7 (N.D.N.Y. May 26, 2017) (abstaining "notwithstanding the fact that *res judicata* or collateral estoppel may ultimately cure an inconsistent outcome" where proceeding in federal court "would be a waste of judicial resources"); *Colony Ins. Co. v. Danica Grp., LLC*, 2014 WL 4417353, at *7 (E.D.N.Y. Sept. 8, 2014) (abstaining because "forcing [a defendant] to litigate in two courts would be unduly burdensome to [the defendant]" and "forcing two courts to adjudicate the [insurance] [p]olicies' enforceability would be a waste of judicial resources," even though "collateral estoppel would likely prevent the courts from reaching inconsistent outcomes").

### 3. The Order in Which the Proceedings Were Filed and Advancement in the Fora.

The fourth *Colorado River* factor favors abstention due to the extensive proceedings in the Vermont Civil Suit and their imminent resolution in a trial scheduled to take place in approximately two months. "[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions." *Moses H. Cone*, 460 U.S. at 21. Where, as here, "the [Vermont] state courts have had jurisdiction over the matters in this case far longer than

the federal court[,]" "there have been extensive . . . proceedings in the original action, including substantial, costly discovery . . . and several interlocutory decisions in the state court[,]" and "[t]he federal suit . . . has not moved beyond the initial pleadings and the motion to dismiss[,]" "it hardly seems wise to permit plaintiff to start anew in federal court." *Telesco*, 765 F.2d at 363.

### 4. The Presence of Federal Issues.

The fifth *Colorado River* factor weighs in favor of abstention because Plaintiff's claims are ground entirely in state law, and although "the absence of federal issues does not strongly advise dismissal[] unless the state law issues are novel or particularly complex[,]" *Vill. of Westfield*, 170 F.3d at 124, "the source-of-law factor 'has more influence when a federal rule of decision is involved[.]'" *Bethlehem Contracting Co. v. Lehrer/McGovern, Inc.*, 800 F.2d 325, 328 (2d Cir. 1986) (quoting *Giardina v. Fontana*, 733 F.2d 1047, 1053 (2d Cir. 1984)). In this case, no federal rule of decision is involved, the source of law is Vermont, and Plaintiff's claims arise out of discretionary, substantive, and procedural decisions of the Vermont Superior Court.

### 5. The Adequacy of State Court Procedures to Protect Plaintiff's Federal Rights.

"In analyzing the sixth factor in the special circumstances test, federal courts are to determine whether the 'parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties.'" *Vill. of Westfield*, 170 F.2d at 124 (quoting *Moses H. Cone*, 460 U.S. at 28). "If there is any substantial doubt as to this, it would be a serious abuse of discretion to grant the stay or dismissal[.]" *Moses H. Cone*, 460 U.S. at 28. "This factor, like choice of law, is more important when it weighs in favor of federal jurisdiction." *Bethlehem Contracting Co.*, 800 F.2d at 328.

Because Plaintiff raises only state law claims, she does not assert any federal right that would be imperiled if she were forced to litigate her claims in her original chosen forum. Moreover, the Vermont court system affords her the opportunity for re-examination of the Vermont Superior Court's decisions through an appeal to the Vermont Supreme Court which is already familiar with some of her claims. *See Ferolito v.*

14

*Menashi*, 918 F. Supp. 2d 136, 144 (E.D.N.Y. 2013) (holding that the plaintiff "raises only state law claims against [the defendant], all of which can be sufficiently litigated in, and resolved by, the state court[,]" and thus "[t]he state court can adequately protect [the plaintiff]'s rights").

### 6. The Vexatious or Reactive Nature of This Litigation.

Defendant argues that abstention is appropriate because "[t]he real purpose behind Plaintiff's filing suit in this Court is that her attorneys are unhappy with the presiding state court judge's rulings on several pre-trial motions." (Doc. 5 at 14.) Courts have found "considerable merit" in the notion "that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to defer to a parallel state litigation under *Colorado River*" primarily when "the same party is plaintiff in both courts and sues in the federal court on the same cause of action after [s]he has suffered some failures in the earlier state court action." *Telesco*, 765 F.2d at 363 (quoting *Moses H. Cone*, 460 U.S. at 17 n.20) (affirming the district court's dismissal of the plaintiff's state law claims premised on a novel theory of fraud because the plaintiff brought similar claims under a different theory of liability in state court on which he did not prevail).[2]

Plaintiff filed her Complaint in federal court after: (1) the Vermont Superior Court granted Defendant's motion for partial summary judgment and dismissed her request for punitive damages and attorney's fees; (2) Plaintiff's motion to preclude Defendant from interfering with her ability to interact with her treating physicians was denied; and (3) Plaintiff's motions to recuse the presiding Vermont Superior Court judge were unsuccessful. The nature and timing of her federal suit thus gives rise to a reasonable

---

[2] *See also Am. Disposal Servs., Inc. v. O'Brien*, 839 F.2d 84, 88 (2d Cir. 1988) (affirming the district court's dismissal of plaintiff's claims under *Colorado River* in "a case involving a plaintiff who, having failed to obtain the desired relief in its home state forum of choice, brings a second proceeding in order to try again"); *Iacovacci v. Monticciolo*, 2019 WL 2074584, at *7 (S.D.N.Y. May 9, 2019) (granting defendant's motion to dismiss and abstaining where plaintiff was "confronted with unfavorable rulings related to discovery" and "attempted to turn to this Court to litigate his claims"); *Best v. City of N.Y.*, 654 F. Supp. 208, 211 (S.D.N.Y. 1986) ("Permitting these plaintiffs to proceed in federal court over one year after the state court action commenced for the simple reason that they are not happy with the outcome of the state litigation would only serve to encourage litigants to forum shop during the pendency of litigation.").

inference that she would not have initiated this lawsuit in federal court but for the Vermont Superior Court's denial of her motions. *See Abe v. N.Y. Univ.*, 2016 WL 1275661, at *10 (S.D.N.Y. Mar. 30, 2016) ("In light of Plaintiff's numerous failures in the State Action, the fact that he initiated a new suit in federal court gives rise to a reasonable inference that he was merely seeking to pit the state and federal judicial systems against each other, and hoping for a better outcome in the latter").

### 7. Weighing of the Factors.

On balance, the *Colorado River* factors weigh in favor of abstention in this exceptional case. To deny abstention would cast the federal court in the role of an appellate court for the Vermont Superior Court when the proper avenue for such relief is the Vermont Supreme Court. Having chosen to litigate her claims against Defendant in Vermont Superior Court, Plaintiff must await their final determination in her original forum of choice. Were this court to adjudicate those claims, it would almost certainly interfere with parallel proceedings and waste party and judicial resources.

"[W]here, as here, 'the movant has met its burden' of showing that abstention is warranted, 'the *Colorado River* exceptional circumstances test makes no distinction as to whether a dismissal or stay is more appropriate.'" *Abe*, 2016 WL 1275661, at *10 (quoting *Cong. Talcott Corp. v. Roslin*, 1996 WL 499337, at *9 (S.D.N.Y. Sept. 4, 1996)). The court thus exercises its discretion to GRANT Defendant's motion to dismiss Plaintiff's Complaint. Because the court has not adjudicated Plaintiff's claims on their merits, the dismissal is without prejudice.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendant's motion to dismiss WITHOUT PREJUDICE. (Doc. 5.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 19th day of December, 2019.

Christina Reiss, District Judge
United States District Court

16